# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON

### Assigned on Briefs October 1, 2013

## RONALD YATES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No.  01-08883, 01-08884    W. Otis Higgs, Jr., Judge**

_____

**No. W2012-02455-CCA-R3-PC - Filed January 27, 2014**

_____

The Petitioner, Ronald Yates, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions for first degree murder and attempt to commit first degree murder and his sentence of life plus twenty-three years.  The Petitioner contends that he received the ineffective assistance of appellate counsel.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Sean H. Muizers (on appeal) and Eran E. Julian (at post-conviction hearing), Memphis, Tennessee, for the appellant, Ronald Yates.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Charles Summers, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

According to this court's opinion in the appeal of the Petitioner's convictions, the evidence at the trial showed that:

> On January 10, 2001, the defendant entered a residence located at 5086 Bowie Street in Memphis and shot the victims, Michael Monroe, Sr., and Erik Monroe.  Michael Monroe, Sr., died as a result of a gunshot wound to the head.  His fifteen-year-old nephew, Erik Monroe, was shot once in the left arm and once in the right hand.

Jolene Monroe, her brother, Michael Monroe, Sr., her sons, Erik Monroe and twenty-two-year-old Michael Monroe, Jr., and her nephew, Reginald Williams, lived at 5086 Bowie Street. Shortly after leaving for work at 6:00 a.m. on the day of the offenses, Ms. Monroe received a telephone call from one of her sons, who said she "needed to get home quick." According to Ms. Monroe, her brother was dating Linda Matthews at the time of his death.

Erik Monroe, who was in bed with a cold on the day of the shootings, testified that he opened his bedroom door when he heard someone enter the residence. Erik recalled that he saw the defendant standing in the hallway. When the defendant asked for "Mike," Erik responded, "He's in the bathroom." Erik stated that after he returned to bed, he heard his uncle say, "Linda's not here," followed quickly by "knocking up against the wall," which sounded "like a fight." Erik recalled that when he opened his bedroom door, he saw the two men fighting in a corner. As Erik walked toward them, the defendant pulled a gun from his pocket and shot Michael Monroe, Sr., twice. Erik testified that when he ran into his bedroom, the defendant followed him, shooting him first in the left shoulder and then in his right hand as he blocked a shot aimed at his head.

Erik testified that after the defendant ran away, he went into the kitchen, got a drink of water, and then went into his mother's room to call her cell phone. When he did not get an answer, he called his grandmother and, after washing his hand, picked up the telephone to call the police. As he did so, he heard his brother, Michael Monroe, Jr., talking to the police on another phone. At trial, Erik admitted that while he had failed to identify the defendant on three separate occasions prior to trial, he could positively identify the defendant as his assailant. He recalled telling the police that the perpetrator was tall, heavy set, "brown skinned," and wearing a dark skull cap and a striped shirt.

Michael Monroe, Jr., testified that on the morning of the offenses, he had dressed for work and was in the den when he heard his uncle call his name. He went into the hallway, where he saw his uncle and the defendant fighting. He recalled that his uncle directed him to call the police and, as he did so, he heard two gunshots and then fled from the residence. Michael identified the defendant from a photographic lineup approximately two weeks after the offenses but conceded during cross-examination that he had told

-2-

police that he did not see the perpetrator's face and could only describe him as male and wearing dark clothing and a hat.

Reginald Williams, Michael Monroe, Sr.'s stepson, testified that on the morning of the shootings, he was getting ready for school when he heard someone enter the residence. When he heard "bumping" at the end of the hall, he went to investigate. Williams recalled that his stepfather, who was "tussling" with the intruder, directed Michael Monroe, Jr. to call the police. He heard two gunshots as they took a portable telephone outside. Upon hearing the shots, the two younger men ran into the backyard and jumped over the fence. Williams stated that he was unable to identify the intruder because he never saw his face. During cross-examination, however, he conceded that he initially described the assailant as light skinned, less than six feet tall, thin, and in his late twenties.

Charles Broome, who worked with Michael Monroe, Sr., and Linda Matthews at National Guard Products, testified that he had seen the defendant at their workplace four or five times within a week before the offenses. Broome recalled that on one occasion, the defendant had warned Michael Monroe, Sr., that "Linda was his girlfriend and [he] needed to leave her alone."

Linda Matthews, who was pregnant with the defendant's child at the time of the shootings, testified that she and the defendant dated for several months but that she ended the relationship approximately four months before the shootings. She recalled that the defendant was upset about the termination of the relationship and often called her or came by her house unexpectedly. According to Ms. Matthews, she began dating Michael Monroe, Sr., shortly after ending her relationship with the defendant. She confirmed that the defendant had asked her to come back to him so that they could raise their child together.

Kathy Booker, who was dating the defendant, testified that on the morning of the shootings, the defendant arrived at her house sometime between 6:30 and 7:00 a.m. and informed her that his truck had broken down. She stated that the defendant appeared to be "upset" or "excited" and asked her to "hold" him. Later that morning, the defendant told her that he had been accused of shooting two people and suggested that she tell the police that he had been with her all night. Ms. Booker explained that the defendant had stopped by her house on the night before, but had not stayed the night.

According to Ms. Booker, she drove the defendant to his house in her car and, later that same evening, her son found a bullet in the car. Ms. Booker testified that she did not own a gun and had never had bullets in her car. She recalled placing the bullet in an envelope and informing the police of its existence but explained that they never came to examine it.

Ms. Booker testified that it was "some weeks" before the defendant surrendered to the police and that they discussed the accusations every day during that time period. During that time, the defendant did not stay at his residence and communicated with her by telephoning her workplace. According to Ms. Booker, the defendant claimed that he had never been to 5086 Bowie and that he did not know anything about the shootings. She acknowledged that she had not given the bullet to the prosecutor until the week before trial. Ms. Booker testified that she feared the defendant, explaining that on the night before the shootings, he showed her a gun and said, "It's a good thing your boyfriend wasn't here. I'd have shot him and thr[own] him over the railing."

Dr. O'Brian Cleary Smith, who performed the autopsy on Michael Monroe, Sr., testified that the cause of his death was an intra oral gunshot wound. He stated that the bullet, a .380 caliber hollow point, traveled through the victim's mouth, fracturing the pallet, and then the base of the skull where it joined the spinal cord. Bone fragments from the skull fracture damaged the brain stem and the cerebellum. He stated that the bullet traveled from front to back and slightly left to right, coming to rest in the back of the head. It was Dr. Smith's opinion that the gunshot wound would have caused instantaneous incapacitation and that the bullet's trajectory was consistent with the victim's lying face up when he was shot.

During cross-examination, Dr. Smith acknowledged that the bullet trajectory would also have been consistent with the defendant and the victim standing face to face. He stated that the absence of powder burns indicated that the gun was fired from a distance greater than two feet. Dr. Smith testified that the victim suffered only one gunshot wound and that the bullet did not exit the body.

David Hoffman, the defendant's employer, testified that approximately one month after the shootings, the police arrived at his place of employment to take custody of the defendant. He recalled that the defendant was doing paperwork at the time and appeared to be "shocked" and "stunned" when he

saw the police. Hoffman remembered that the defendant quietly submitted to the arrest.

*State v. Ronald Yates*, No. W2003-02251-CCA-R3-CD, slip op. at 2-4 (Tenn. Crim. App. Dec. 8, 2004).

A Shelby County Criminal Court jury convicted the Petitioner of first degree murder and attempt to commit first degree murder, and he was sentenced to life plus twenty-three years. He appealed his convictions and argued several issues, including that he received the ineffective assistance of trial counsel. This court affirmed the convictions but modified the twenty-three-year sentence for attempted first degree murder to twenty years. *Id.* at 1.

In 2005, the Petitioner filed a pro se petition for post-conviction relief, contending that he received the ineffective assistance of counsel. In 2007, he filed an amended petition through counsel, contending that although certain ineffective assistance claims had been raised and determined in the motion for a new trial and on appeal of the Petitioner's convictions, the petition contained new factually distinct issues concerning the ineffective assistance of trial counsel and the new issue of the ineffective assistance of appellate counsel. This court concluded that although the Petitioner's claims of the ineffective assistance of trial counsel were litigated previously and could not be relitigated in the post-conviction proceedings, the trial court erred in dismissing the petition without conducting an evidentiary hearing on the ineffective assistance of appellate counsel and remanded for further proceedings. *Ronald Yates v. State*, No. W2008-02067-CCA-R3-PC (Tenn. Crim. App. Dec. 3, 2009).

At the post-conviction hearing, the Petitioner testified that he had different counsel in general sessions court, at the trial, and at the motion for a new trial hearing and that he had the same counsel for his motion for a new trial and on appeal of his convictions. He said that he hired trial counsel but that when he could no longer afford to pay, the court appointed the attorneys. He thought appellate counsel was appointed.

The Petitioner testified that he first met appellate counsel after the motion for a new trial hearing when counsel brought him an appellate brief. He said they did not discuss the case or the issues he wanted to raise before the motion for a new trial hearing. He said counsel brought him the brief to review.

The Petitioner testified that trial counsel did not visit him in preparation for the trial. He said that he had an "initial visit" with trial counsel at the jail, that he did not receive other visits from counsel, and that he saw them at court hearings. He said the only time appellate

counsel visited him at the jail was after the motion for a new trial hearing. He said he never discussed the motion for a new trial with any counsel.

The Petitioner testified that he did not realize appellate counsel was his attorney at the motion for a new trial hearing. He said none of his counsel discussed the ineffective assistance of counsel claim with him. He read in the transcripts that trial counsel stated he was ineffective during the trial. He said the ineffective assistance of counsel claim was raised at the motion for a new trial hearing and on appeal. Other inmates told him that counsel should not have addressed the claim in his motion for a new trial because it could not be argued again during post-conviction proceedings. He said appellate counsel told him the ineffective assistance of trial counsel claim could be addressed in a post-conviction petition. He told counsel that he did not want the claim argued in the brief and that he would rather address it later. He asked counsel not to include it. When asked if he wanted other issues raised in the ineffective assistance of counsel argument, he said that he did not have a trial transcript when appellate counsel gave him the brief but that after he received the transcript, he found inconsistencies at the trial he would have addressed in the brief.

The Petitioner said that trial counsel failed to conduct an independent investigation of the State's witnesses and was ineffective in cross-examination. He said counsel was ineffective in cross-examining Eric Monroe, who gave inconsistent testimony. He said Mr. Monroe testified that the Petitioner stood over the victim and shot him, meaning gravity would have caused stippling on the victim. He said Dr. Smith testified, though, that no stippling was found on the victim's body. He said that trial counsel never addressed the inconsistency, that he attempted to get counsel's attention, and that counsel told him to "hold on" he would "get back with that." He said counsel did not accept his input during the trial. He said he told counsel he wanted to testify.

The Petitioner testified that he also would have argued that trial counsel was ineffective by presenting an identity defense rather than self-defense. He told co-counsel and counsel's investigator that he was at the scene, that he and the victim fought, that he grabbed a gun, that the victim grabbed his hand and hit it against the wall, that the gun went off twice, and that when he fell into a corner, the gun fired again. He said, though, that they never discussed the theory that he was not at the scene and that counsel never asked for his input about what theory to present. He said that everyone would have thought he was lying if he testified that he was at the scene after counsel argued he was not. He said he learned on the day of the trial that counsel's theory was that he was not at the scene. He said he would have included the issue in his ineffective assistance of counsel claim.

The Petitioner testified that he also would have argued that trial counsel was ineffective in cross-examining Linda Matthews and Charles Broome about an encounter the

Petitioner had with the victim. He said Ms. Matthews's testimony would have contradicted Mr. Broome's testimony that the Petitioner argued with the victim. He said that Mr. Monroe testified that the Petitioner fired his gun four times and that counsel should have questioned the detective about how many shells and bullets were found at the scene to show inconsistencies. He said counsel should have been aware of these inconsistencies and cross-examined the witnesses about them.

The Petitioner agreed that trial counsel had difficulty during the trial and that trial co-counsel did not attempt to resolve the problem, object, or take over questioning. He said appellate counsel did not raise the issue that co-counsel was ineffective for failing to intervene. He said that if the inconsistencies in testimony were addressed by trial counsel, the outcome of his trial probably would have been different and that he would not have been convicted of first degree murder but maybe second degree or less. He thought the outcome of his appeal would also have been different had appellate counsel raised these issues.

On cross-examination, the Petitioner testified that he was "not unhappy" with counsel but was disappointed in the outcome of his trial and appeal. He said his "major" complaint with appellate counsel was that he did not discuss anything with the Petitioner before submitting the brief. He thought most of the issues in the brief were raised in the motion for a new trial but did not see anything wrong with the arguments except the ineffective assistance of counsel. He said he and appellate counsel did not discuss the arguments raised in the motion for a new trial and did not discuss anything before they met about the appellate brief. He said he listened to another inmate's advice that the ineffective assistance of counsel claim should not have been raised before post-conviction proceedings.

The Petitioner agreed that Eric Monroe and Michael Monroe, Jr., testified that they saw the events at the apartment. He agreed that trial counsel questioned the two witnesses about their inconsistent identifications and argued the witnesses could not identify the man who attacked the victims. He said that because he was at the scene and "scuffled" with the victim, counsel's argument that the witnesses could not identify him was not good. He said that during the scuffle, he had a gun in his pocket, that the victim pulled the Petitioner's coat over his head, that the gun fell from his coat, that he grabbed the gun, that the victim grabbed his arm, and that the gun fired twice. He said counsel should have questioned Eric Monroe about why the bullet did not penetrate his hand and hit his face if Mr. Monroe used his hand to block a shot aimed at his head.

The Petitioner testified that appellate counsel failed to argue properly the ineffective assistance of trial counsel claim. He said that for the appellate court to understand what happened, the ineffective assistance of counsel should have been presented in detail on appeal as it was at the post-conviction hearing.

On redirect examination, the Petitioner testified that he was aware trial counsel worked together, assumed that they would discuss information he gave either of them, and thought any theory would be developed based on information he provided them. He said he only spoke with appellate counsel about the ineffective assistance of trial counsel claim when counsel brought him the brief after the motion for a new trial hearing. He said appellate counsel told him he could raise the ineffective assistance of counsel claim on appeal and in post-conviction proceedings. On recross-examination, the Petitioner said he did not remember if the main issue on appeal was trial counsel's failure to object to the admission of a bullet.

Appellate counsel testified that in August 2003, trial counsel asked him to represent the Petitioner on appeal. He did not remember if he was appointed or retained. He said that at the time, he and trial counsel handled several death penalty cases together, that they had a good working relationship, and that trial counsel knew he could write an appellate brief. He said they did not work in the same office. He said the motion for a new trial hearing transcript correctly reflected the hearing occurred on August 27, 2003, although he did not remember the date. He did not recall how long before the hearing that trial counsel approached him about representing the Petitioner or whether he or trial counsel represented the Petitioner on the motion for a new trial. He did not remember feeling rushed in his preparations. He agreed that the trial occurred in December 2002 and that the transcripts were available in May 2003.

Appellate counsel testified that his practice was to review the trial transcripts and speak with the defendant before the motion for a new trial and post-conviction hearings. When asked if he saw his name listed on the Petitioner's jail visitation records, he said he was unsure he met the Petitioner in the jail visitation area. He said he probably met with the Petitioner in the back of the courtroom but did not know the exact dates. He denied that his practice was to meet a defendant on a court setting and said his practice was to meet at the jail. He recalled meeting with the Petitioner but could not recall when or where. He knew the Petitioner had been in custody and assumed he met with him in "this building" but did not know whether the meeting was in the visitation area or in the courtroom.

Appellate counsel agreed that his name appeared on the motion for a new trial hearing transcript, although he did not recall if he handled the hearing. He assumed he met with the Petitioner before the hearing but did not know if he or trial counsel prepared the motion. He said he raised the ineffective assistance of counsel at the motion for a new trial hearing because the Petitioner insisted. He did not know where he met the Petitioner but recalled meeting with him and was sure he met with him several times because he had never filed a post-conviction issue as part of a motion for a new trial. He did not know if deciding the issues to raise in a motion for a new trial was a legal decision but said that if his client

wanted an issue raised in a motion for a new trial that was well-grounded in the law, he would raise it.

Appellate counsel denied having a case file or notes on the Petitioner's case. He said that although the case was about nine years old, it was his practice to keep records that long. He did not know where his files from that time were but said he had files in a previous office's basement that flooded. He thought, though, he left the office before he handled the Petitioner's case. He said that he searched a previous office but did not find the file and that he did not know where the Petitioner's file was.

Appellate counsel testified that he remembered discussing with trial counsel the Petitioner's decision to raise the ineffective assistance of counsel claim in his motion for a new trial. He thought an issue occurred at the trial regarding the defense being unaware of a bullet until it was admitted as an exhibit. He said that trial counsel contended they were "sandbagged" and that the Petitioner was very adamant and upset about the bullet's being admitted. He said he did not remember specific dates or where he met the Petitioner but remembered being surprised about the bullet because he did not believe the prosecutor would have done that.

Appellate counsel testified that the Petitioner's case was the only case in which he had raised the ineffective assistance of counsel during a motion for a new trial and that he thought it was a terrible idea. When asked why he presented the claim if he thought it was a "terrible" idea, counsel said it was similar to allowing clients to testify at a trial when they insisted against his advice because it was the client's trial and case. He said he advised clients as to what he thought was a good idea and sound legal strategy but did not force them to do certain things. He said the final decision rested with the client. He said it would not surprise him if the Petitioner testified at the post-conviction hearing that he did not want the issue raised.

Appellate counsel testified that when he handled a motion for a new trial, he typically gave copies of the transcripts to the defendant but not necessarily before the hearing. He stated that if he had the transcripts he would give a copy to the defendant. He said that when he handled post-conviction proceedings, his clients usually had copies of the transcripts from their previous appeals but that if they did not, he would provide them. He did not recall when or if the Petitioner received trial transcripts. He stated that when preparing for a post-conviction proceeding, he typically spoke to the client about trial issues and that he remembered speaking with the Petitioner about the issue regarding the bullet. He said he did not remember the exact facts of the case. He thought a woman was killed and remembered something about a bullet or a gun in an envelope not being discovered by trial counsel until it was introduced at the trial but said it was "all kind of sketchy as to exactly what happened."

Appellate counsel testified that it took a couple of weeks to review the file and the trial transcripts and speak with the client to file an amended post-conviction petition and that it would not take more than two weeks to file the petition if the petitioner pleaded guilty. When asked if the time between his receiving the transcripts in May and the motion for a new trial hearing in August was a typical amount of time for post-conviction preparation, he said that if he had all the transcripts, he thought the time was adequate but that it depended on the court because some gave more time than others. He said that based on his normal practice, the time was adequate.

After reviewing the appellate brief, appellate counsel agreed he focused the ineffective assistance of counsel claim on trial counsel's inability to hear and the resulting problems. He did not recall why this was the only issue raised concerning ineffective assistance but said he "would bet" it was the only one he could find. Although he did not recall speaking with the Petitioner about the theory presented at the trial or his conversations with trial counsel in preparation for the trial, he was sure he did. He assumed he asked the Petitioner what he and trial counsel discussed and what defense was presented but denied having any actual recollection.

Appellate counsel testified that if the Petitioner had told him he wanted to testify but trial counsel would not allow him or he was prohibited by a defense he did not want, counsel would have raised the issue as the ineffective assistance of counsel. He remembered someone stating that trial counsel had co-counsel during the trial when trial counsel could not hear. He said he had no specific knowledge as to why he did not raise the ineffective assistance of co-counsel but assumed it was because co-counsel told him she relayed the information trial counsel missed. He said that he had tried many cases with trial counsel and knew he was "profoundly deaf" in one ear and did not like wearing a hearing aid and that he was familiar with the procedure of telling trial counsel what was said by a witness when trial counsel could not hear. He said he had no specific knowledge regarding the Petitioner's case but guessed co-counsel told him that she relayed the information.

Appellate counsel testified that he told the Petitioner that raising the ineffective assistance of counsel claim during the motion for a new trial would prohibit him from arguing it in post-conviction proceedings and that he thought it was a "horrible" idea to raise the claim. He thought trial counsel also told the Petitioner it was a bad idea. He did not think it was ultimately his decision what issues to raise on appeal any more than it was his decision whether a client testified. He believed that when a client was adamant about an issue being included on appeal and was advised properly as to the ramifications, it was his obligation to include the issue. He said he interpreted the law that way, although he could be wrong. He said he had no specific knowledge about discussing with the Petitioner how raising the ineffective assistance of trial counsel would prevent him from being able to raise

-10-

other issues against trial counsel later. He remembered telling the Petitioner that raising the issue was a bad idea, that he would lose his right to a post-conviction hearing, and that this would be his one "shot."

Appellate counsel testified that he did not remember a customary form used in 2003 or 2004 by post-conviction counsel to show they had explained to a petitioner that by filing a post-conviction petition, he waived other constitutional issues in later proceedings. He said that the form may have existed but that he was unaware of it. He denied viewing the Petitioner's appeal as a post-conviction proceeding. He did not believe he completed a form with the Petitioner explaining that after a post-conviction petition was filed, the Petitioner could not raise new issues at a later time.

Appellate counsel testified that the length of the appellate briefs he wrote depended on the issues and the appeal. He said that in some cases, he requested to exceed the page limit and that in others, the brief was shorter than the Petitioner's. He denied he thought there was merit to the ineffective assistance of trial counsel argument. Counsel did not remember if the Petitioner was adamant about including other issues on appeal. He said that if the Petitioner had wanted other issues included, he would have included them. He said he thought it was better to include more issues on appeal because he did not know which would be important. When asked if he would have omitted issues if the Petitioner asked, he said it depended on the issue. He said, though, a client had never asked him not to include an issue and did not remember it happening in the Petitioner's case. He said that if the Petitioner had a good reason to omit an issue and wanted the appellate court to focus on the issue with more merit, he would consider not including an issue.

On cross-examination, appellate counsel testified that the Petitioner was charged with first degree murder. He agreed that during the trial, counsel lost concentration and did not hear when a bullet was entered as an exhibit and that when counsel recognized the mistake, he made a motion to dismiss and a motion for a mistrial, which the court denied. He agreed that the Petitioner was convicted and that trial counsel was still upset about the mistake. He remembered trial counsel asking him to represent the Petitioner on appeal and said counsel may have brought him the appeal to raise the ineffective assistance claim when it was fresh on the trial judge's mind. He agreed it was a strategy to raise the ineffective assistance claim in the motion for a new trial, allow the judge that heard the trial to consider the issue, and allow trial counsel to testify about what happened and possibly remedy the situation.

Appellate counsel agreed that during his more than twenty-year career, the courts have given more credence to what a defendant wanted done in his case. He said that the Petitioner wanted the ineffective assistance claim raised in his motion for a new trial and on appeal of his convictions.

-11-

Appellate counsel acknowledged that Tennessee's Post-Conviction Act was unique and that in other states, ineffective assistance was raised on appeal. He agreed it was "not unheard of nationally" to raise the issue and said it was not illegal or unethical to raise it in Tennessee. He thought the idea behind having an appeal of a defendant's convictions and a post-conviction proceeding was to give the defendant "two bites at the apple."

Appellate counsel testified that he remembered meeting with the Petitioner because he remembered the Petitioner's being very upset about the verdict, more upset than most of his clients. He thought the Petitioner was surprised by the verdict. He agreed that when he filed an appeal, he included the issues he thought the court would consider because he did not want to miss any. He denied that when he reviewed the brief, he thought any of the issues included were a mistake, other than the ineffective assistance of counsel. He thought that the other issues were "pretty well covered" and that it was a "pretty clean" trial.

In denying post-conviction relief, the trial court noted that the petition, amended petition, and "WRITTEN ARGUMENT" included the Petitioner's allegations of error but that he only presented evidence regarding the ineffective assistance of appellate counsel at the hearing. The court found that the other claims in his pleadings were waived and only addressed the ineffective assistance of appellate counsel.

The Petitioner argued that appellate counsel was ineffective for failing to argue that the Petitioner's motion to suppress the illegal identification made by Eric Monroe was erroneously denied. The trial court found that the Petitioner only made a cursory allegation and that because he failed to present any supporting evidence, the issue was waived.

Regarding the Petitioner's argument that appellate counsel was ineffective for raising the ineffective assistance of trial counsel on appeal of the Petitioner's conviction, the trial court found that appellate counsel was not deficient in raising the claim. The court stated that counsel must abide by his client's decisions regarding the objectives of representation and consult with the client about how to accomplish the client's objectives. The court found that counsel raised the ineffective assistance of counsel on appeal because the Petitioner insisted and that the Petitioner's testimony that he did not want counsel to raise the issue was not persuasive. The court noted that appellate counsel was an experienced criminal defense attorney who was aware of the dangers of raising ineffective assistance on appeal and that counsel warned the Petitioner of those dangers. The court was not convinced that counsel raised the claim against the Petitioner's wishes. The court found that the Petitioner failed to show counsel's decision was unreasonable and that counsel was not deficient.

Regarding the Petitioner's argument that appellate counsel was ineffective for failing to present evidence at the motion for a new trial hearing to support the ineffective assistance

of trial counsel, the trial court found the Petitioner's claims that counsel did not investigate the allegations of ineffective assistance without merit. The court noted that the motion for a new trial hearing transcript showed counsel raised several arguments concerning specific ineffective assistance issues and that counsel could not have raised the arguments without investigating the issues. The court stated that the Petitioner did not address counsel's failure to call the Petitioner as a witness during the motion for a new trial hearing and that the issues the Petitioner wanted raised regarding the ineffective assistance of counsel did not concern the motion for a new trial. The court found that the Petitioner did not offer any issues at the post-conviction hearing that would have changed the result of the appeal. The court also found that counsel made a strategic decision to argue certain points of error in the motion for a new trial and that his handling of the ineffective assistance of counsel claim at the motion for a new trial hearing was not deficient.

The Petitioner argued that appellate counsel was ineffective for challenging the ruling on the motion for a mistrial without reserving the right to challenge the effectiveness of trial counsel in post-conviction proceedings. The trial court found that the Petitioner failed to present supporting evidence and that the issue was waived.

Regarding the Petitioner's argument that appellate counsel was ineffective for raising the ineffective assistance of counsel claim in the motion for a new trial, the trial court found that counsel's performance was not deficient. The court stated that the Petitioner wanted ineffective assistance raised in the motion for a new trial and that it was counsel's strategic decision to raise the claim because of the Petitioner's and counsel's concerns that trial counsel was ineffective. The court found unpersuasive the Petitioner's testimony that appellate counsel did not meet with him before the motion for a new trial hearing. The court found that appellate counsel's decision to raise the ineffective assistance of counsel in the motion for a new trial was not "objectively unreasonable" and did not constitute deficient performance.

The trial court noted that the Petitioner presented several issues he felt appellate counsel should have raised in support of the ineffective assistance of trial counsel. The Petitioner asserted that appellate counsel should have argued that trial counsel's theory and strategy precluded him from testifying, that trial counsel was ineffective in cross-examining witnesses about the victim's wounds, and that trial co-counsel was ineffective. The court stated that the determination of which issues to raise on appeal was a matter of professional judgment, that it was not the function of the court to second guess strategic choices, and that appellate counsel's failure to address the issues was made with professional judgment. The court found that appellate counsel chose to raise four ineffective assistance of counsel issues and that counsel's failure to raise other issues of ineffective assistance did not constitute deficient performance.

The trial court found that appellate counsel's argument concerning the ineffective assistance of counsel claim in the motion for a new trial and on appeal was not deficient. The court stated that counsel presented several well-articulated arguments on the issue at the motion for a new trial hearing and that the court rejected the arguments and ruled against the Petitioner. The court also stated that counsel raised in his brief four separate, well-articulated issues regarding the ineffective assistance of trial counsel and that the argument was within his "standard treatment" of such appellate issues. The court found that appellate counsel performed as well as a lawyer with ordinary training and skill in criminal law. The court found the Petitioner failed to prove that appellate counsel's performance was deficient or that the Petitioner was prejudiced by his representation. This appeal followed.

The Petitioner contends that he received the ineffective assistance of appellate counsel. He argues that the jail records and his testimony show that appellate counsel did not communicate with him as ethically required by Tennessee Supreme Court Rule 8, that counsel raised an issue on appeal he considered without merit and a horrible idea, and that counsel knowingly deprived the Petitioner of the right to argue the ineffective assistance of trial counsel in post-conviction proceedings. The State counters that the Petitioner received the effective assistance of appellate counsel. The State argues that the Petitioner waived the issue concerning counsel's failure to communicate with him by not presenting the issue in his written argument and that the record supported the trial court's findings concerning counsel's effectiveness in raising the ineffective assistance of trial counsel on appeal. We conclude that the Petitioner is not entitled to relief.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

The Fourteenth Amendment to the United States Constitution guarantees an indigent criminal defendant the right to counsel for his first appeal. *Douglas v. California*, 372 U.S. 353, 357 (1963). The right to appellate counsel encompasses the right to the effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985). The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which is applied to claims of ineffective assistance of trial counsel asserted under the Sixth Amendment to the United States Constitution, is also used to determine whether appellate counsel was constitutionally

-14-

effective. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004); *see also Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of attorney error on appeal).

The burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Porterfield v. State*, 897 S.W.2d 672, 678 (Tenn. 1995). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The petitioner's failure to establish either prong of the *Strickland* test results in the denial of relief. *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

As to the State's argument that the Petitioner waived his issue concerning appellate counsel's failure to communicate with him, we note that in the Petitioner's "WRITTEN ARGUMENT," he discussed the conflicting testimony from the post-conviction hearing concerning appellate counsel's visits with the Petitioner. The "WRITTEN ARGUMENT" states that the Petitioner testified that appellate counsel did not visit him at the jail before the motion for a new trial hearing and only visited briefly before filing the appeal, that appellate counsel testified that he visited the Petitioner on several occasions, and that the jail visitation records did not support appellate counsel's testimony. Although the jail records do not show that appellate counsel visited the Petitioner at the jail, appellate counsel testified that he was unsure he met the Petitioner in the jail visitation area and that he probably met with the Petitioner in back of the courtroom. The trial court found unpersuasive the Petitioner's testimony that appellate counsel did not meet with him before the motion for a new trial hearing. We cannot conclude that the Petitioner failed to present the issue in his written argument or at the post-conviction hearing, and it is not waived. However, the evidence does not preponderate against the trial court's findings that appellate counsel met with the Petitioner before the motion for a new trial hearing, and the issue is without merit.

Regarding the Petitioner's argument that appellate counsel was ineffective by raising an issue on appeal he considered without merit and a bad idea, he argues that Tennessee Supreme Court Rule 8 requires attorneys to abide by a client's decision whether to enter a plea, waive a jury trial, and testify but that the rule does not force counsel to argue claims on appeal that counsel feels are meritless or a "horrible" idea at the whim of their clients.

Tennessee Supreme Court Rule 8 provides the Rules of Professional Conduct, and Professional Conduct Rule 1.02(a) states that a

> lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client about the means by which the client's objectives are to be accomplished. . . . In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

Although the rule lists three situations in which a criminal defense attorney must abide by his client's decisions, it also requires attorneys to abide by the client's decisions concerning the objectives of representation and to consult with the client as to how to accomplish the objectives. Appellate counsel denied he thought there was merit to the ineffective assistance of trial counsel claim, but he later agreed it was a strategy to raise it in the motion for a new trial, to allow the judge that presided over the trial to consider the issue, and to allow trial counsel to testify about what happened and possibly remedy the situation. He also agreed that when he filed an appeal, he included the issues he thought the court would consider.

To be effective, appellate counsel must use his professional experience and knowledge to determine which issues to advance and which issues have no merit. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). Generally, these decisions are left to the sound discretion of appellate counsel. *Id.* Appellate counsel said that he raised the ineffective assistance of counsel claim in the motion for a new trial because the Petitioner insisted and that if his client wanted him to raise an issue in a motion for a new trial that was well-grounded in the law, he would raise it. The trial court found that appellate counsel presented several well-articulated issues in support of the ineffective assistance of counsel claim. The court found that appellate counsel raised the ineffective assistance of counsel on appeal because the Petitioner insisted, that the Petitioner's testimony that he did not want appellate counsel to raise the issue was unpersuasive, and that it was appellate counsel's strategic decision to raise the claim. The record does not preponderate against the trial court's findings.

The Petitioner also argues that appellate counsel knowingly deprived the Petitioner of the right to raise the ineffective assistance of trial counsel in post-conviction proceedings. Appellate counsel testified that he told the Petitioner that raising the ineffective assistance of counsel claim in the motion for a new trial would prohibit him from arguing it in post-conviction proceedings. The trial court found that appellate counsel was an experienced criminal defense attorney who was aware of the dangers of raising the ineffective assistance on appeal and that appellate counsel warned the Petitioner of the dangers. The court was

-16-

unconvinced that appellate counsel raised the issue against the Petitioner's wishes. Nothing in the record preponderates against the trial court's findings that the Petitioner was not advised of the ramifications of raising the ineffective assistance of counsel claim on appeal. We note that, as was sought in this case, an ineffectiveness claim may be raised in a conviction appeal and that if the claim is raised ineffectively, the issue may be addressed in a subsequent post-conviction petition.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE